**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fernando Hernandez Richter,<br><br>Plaintiff,<br><br>v.<br><br>Christopher Romero, et al.,<br><br>Defendants. | NO. CV-19-5513-PHX-DGC<br><br>**ORDER** |

Plaintiff Fernando Hernandez Richter, who is currently confined in the Arizona State Prison Complex and is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that on October 26, 2017, he was severely assaulted by one or more prisoners. He asserts an Eighth Amendment failure-to-protect claim against Defendants Christopher Romero and Julie Bowers. He alleges that Defendants knew of and disregarded an excessive risk to his safety, resulting in his assault. Doc. 31 at 11-12, 16-17. A five-day jury trial will begin on January 29, 2024. Doc. 152.

The parties have filed various motions in limine. This order will rule on most of the motions and identify issues to be addressed at the Final Pretrial Conference.

**A.    Plaintiff's Motion in Limine (Doc. 155) and Defendants' Motion in Limine No. 1 (Doc. 157).**

Plaintiff's motion in limine asks the Court to preclude (1) evidence that the State will pay for his future medical costs, and (2) evidence of his criminal history. Doc. 155. Defendants' first motion in limine overlaps with Plaintiff's second request and asks the Court to rule that Plaintiff's child abuse convictions are admissible. Doc. 157.

**1.     Payment for Future Medical Costs.**

Invoking the collateral source rule, Plaintiff asks the Court to exclude evidence that his housing and medical care will be paid for by the State throughout the remainder of his life (because his present sentence does not expire until 2071). Doc. 155 at 3-4. Defendants respond by stating that they "do not dispute that the collateral source rule prohibits them from arguing or having [witnesses] testify that the State, rather than Plaintiff, will pay for Plaintiff's medical expenses and life care plan. Defendants do not intend to elicit such testimony or make such arguments at trial." Doc. 170 at 4-5. The Court accordingly will grant the portion of Plaintiff's motion invoking the collateral source rule.

**2.     Plaintiff's Criminal History.**

Plaintiff asks the Court to preclude evidence of his criminal history, but he does not clearly identify that criminal history. He appears to be focusing on the child abuse convictions that led to his present incarceration, but even those convictions are not clearly identified. Plaintiff does not disclose the specific crimes for which he was convicted or the dates of his convictions, but refers only to "convictions for child abuse and other related offenses." Doc. 155 at 3. Plaintiff attaches three pages of a presentence report that describe horrific child abuse committed by Plaintiff and his former wife against the wife's three daughters – Plaintiff's step-daughters. Doc. 156-1. The Court assumes these child abuse convictions are the focus of his motion. If Plaintiff has other criminal history, it is not addressed in this order.

Plaintiff argues that the child abuse convictions should be precluded from evidence under Rule 401. He argues that they are not relevant because the sole issues in this case are whether Defendants acted with deliberate indifference and the extent and nature of his damages. He also asserts that Rule 403 bars their admission because any probative value of his child abuse convictions would be substantially outweighed by the unfair prejudice he would suffer if the jury learned the nature of his crimes.

Defendants ask the Court to rule that Plaintiff's child abuse convictions are admissible at trial. Defendants argue that Plaintiff's expert, Carl Toersbijns, relied on these convictions to support his opinion that Plaintiff faced assault risks Defendants should have

been aware of, but Plaintiff specifically states that he will not elicit this testimony from his expert at trial. Doc. 155 at 3. Defendants argue that "Plaintiff used the nature of facts of his crime against Defendants as a sword" in his summary judgment briefing, and "cannot now stand behind the crimes using Rule 403 as a shield." Doc. 157 at 3. But the fact that Plaintiff used the expert opinion to oppose summary judgment will not be known to the jury and therefore does not "open the door" before the jury as Defendants contend.[1] Nor does the fact that Defendants asked Plaintiff's expert about conviction-related issues in his deposition open the door as Defendants contend. *See* Doc. 189 at 33. The Court must decide what information will be heard by the jury, and Plaintiff avows that he will not use the convictions as a sword before the jury. He therefore is not inconsistently seeking to shield them from the jury. Defendants' argument that Plaintiff has opened the door to admission of his child abuse convictions is not persuasive.

Defendants also argue that their theory of the case at trial will be that Plaintiff's attack was arranged by his former brother-in-law. Defendants argue that the brother-in-law assaulted Plaintiff, or arranged to have him assaulted, because Plaintiff's abuse of the step-daughters resulted in the brother-in-law's sister (Plaintiff's former wife and the mother of the girls) being sentenced to 20 years in prison – a motive for a potential assault not known to Defendants. Doc. 157 at 4. Plaintiff responds that this theory of the case is speculative and based on inadmissible hearsay. Doc. 171 at 4. The statement cited by Defendants in support of their theory does appear to be hearsay: "Inmate Richter claims his ex-wife told him he was assaulted by her brother, inmate Richter claims he was assaulted by seven inmates but was unable to identify. My mother said I was assaulted because of my case and it was on the news." Doc. 170-2 at 5. The Court must hear additional argument from the parties on this issue. At the Final Pretrial Conference, Defendants should be prepared to provide the Court with admissible evidence that will enable them to assert their theory of the case at trial. Only then will the Court be able to determine whether Defendants' theory

---

[1] The Court also notes that it did not rely on the nature of Plaintiff's convictions in denying Defendants' motion for summary judgment. *See* Doc. 133 at 8-9, 11-13.

of the case makes Plaintiff's child abuse conviction admissible, and, if so, the extent of their admissibility.

### B. Defendants' Motion in Limine No. 2 (Doc. 158).

Defendants move to exclude any reference to prior reprimands, suspensions, or disciplinary violations by Defendant Romero and witnesses Gerald Thompson, Vivian Baltierra, and David Madsen. Doc. 158. Plaintiff responds that he does not seek to admit any of this evidence except a prior conviction of Defendant Romero. Doc. 172 at 2.

In 2010, Defendant Romero was suspended from the Department of Corrections for 40 hours after falsely telling police officers that he was driving a vehicle involved in an accident, when in fact a family member was driving. Doc. 158-2 at 4-5. Plaintiff asserts that Romero was convicted of a crime for this conduct, but the only evidence Plaintiff cites for the crime is Romero's cryptic deposition testimony that he "received . . . tickets, paid my fines." *See* Doc. 172-1 at 6. Plaintiff presents no evidence that these tickets were criminal violations, or, if criminal, the nature of the offenses. If Romero was not convicted of a crime, then impeachment under Federal Rule of Evidence 609 is not available as Plaintiff argues.

Even if Romero was convicted of a crime and it included a dishonest act, as Plaintiff contends, it is beyond the ten-year time period established by Rule 609(b). The conviction would be admissible, therefore, only if the Court finds that "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). The Court cannot make this finding. Any such conviction is 13 years old, arose from a non-work-related incident quite different from the incident at issue in this case, and at most appears to have been a minor misdemeanor resulting in a ticket and fine. Such a conviction does not have significant probative value, and certainly not enough to "substantially" outweigh its prejudicial effect. What is more, "[b]ecause [the test established by Rule 609(b)(1)] is so stringent, convictions more than 10 years old should be admitted very rarely and only in exceptional circumstances." 4 Weinstein's Federal Evidence § 609.06 (2023). Plaintiff has not shown exceptional circumstances. Defendants' Motion in Limine No. 2 is **granted**.

**C.     Defendants' Motion in Limine No. 3 (Doc. 159).**

Defendants move to exclude any reference by Plaintiff or his expert, Carl Toersbijns, to staffing levels at Cook Unit on or before October 26, 2017. Plaintiff responds that this motion is premature because he may elicit testimony from Defendants that they knew staffing levels were low on the day of the incident, increasing the risk factors they should have considered when making housing decisions about Plaintiff. Doc. 173.

To prevail on his Eighth Amendment claim, Plaintiff must show that Defendants Romero and Bowers acted with deliberate indifference. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Plaintiff must satisfy (1) an objective component, which requires him to show that conditions posed a substantial risk of serious harm, and (2) a subjective component, which requires him to show that Defendants were aware of the risk and disregarded it. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Low staffing levels might contribute to a risk of harm, but those levels will be relevant only if they were known to Defendants Romero and Bowers.

The Court accordingly resolves this issue in the following manner. Plaintiff may not mention low staffing levels during his opening statement and may not present evidence of low levels during his case in chief, with one exception. Plaintiff may ask Defendants Romero and Bowers what they knew about staffing levels on the day of the incident. If Defendants knew staffing levels were low, Plaintiff may raise with the Court – out of the hearing of the jury – any additional evidence or arguments he intends to make on this issue. If Defendants were unaware that staffing levels were low on the day in question or cannot recall, further references to this issue will not be allowed. Defendants' motion in limine is **granted in part** as set forth in this paragraph.

**D.     Defendants' Motion in Limine No. 4 (Doc. 160).**

Defendants move to preclude Plaintiff from introducing any evidence or witnesses regarding his post-assault medical treatment or damages, arguing that he did not follow the Court's Case Management Order governing disclosure of treating physicians and never provided a computation of damages that accounted for his medical expenses. Plaintiff responds that he identified Dr. Asser Youssef, who treated Plaintiff, as a potential witness.

Doc. 174 at 2-3. Plaintiff does not dispute that he failed to disclose his medical treatment damages or their computation. He instead argues that, as an incarcerated individual, he was never personally provided with a proper itemization of his medical expenses; that his first set of discovery requests asked Defendants to produce the complete medical file; and that he never received the information and therefore was unable to provide a computation of damages. *Id.* at 3-4. The Court will address the two issues separately: whether Plaintiff can present a claim for medical damages to the jury, and whether Dr. Youssef can testify.

### 1.     Medical Damages Will Be Precluded.

When this case was filed, the Court was involved in the Mandatory Initial Discovery Pilot ("MIDP"), a program implemented in this District and the Federal District Court for the Northern District of Illinois at the request of the Advisory Committee on the Federal Rules of Civil Procedure. The parties in this case were notified at the outset of their obligations under the MIDP. *See* Doc. 3. Plaintiff was required, among other things, to "[p]rovide a computation of each category of damages claimed by you, and a description of the documents or other evidentiary material on which it is based, including materials bearing on the nature and extent of the injuries suffered." *Id.* at 7.[2]

Plaintiff's MIDP disclosure stated the following: "a full calculation of Mr. Richter's [damages] is not currently possible due to the unavailability of his medical records." Doc. 160-1 at 12. Plaintiff does not dispute that this statement was never supplemented, meaning that Plaintiff never disclosed a calculation of his medical damages as required by the MIDP even though he was specifically obligated to supplement incomplete disclosures. *See* Doc. 3 at 5-6; *see also* Fed. R. Civ. P. 26(e).

Plaintiff argues that his nondisclosure was justified because Defendants never produced the information he needed to calculate his damages. Doc. 174 at 4. But Plaintiff has been represented by counsel throughout this lawsuit, and counsel had ample tools to obtain the disclosures they needed. Indeed, the Court's Case Management Order specifically directed the parties to call the Court if they had discovery disagreements, stating

---

[2] The MIDP's disclosure requirements for damages are essentially the same as the standard disclosure requirements imposed by Rule 26(a)(1)(A)(iii).

6

the Court would resolve the disagreements promptly. Doc. 28, ¶ 6(a). While a party "may not have all of the information necessary to provide a computation of damages early in the case, it has a duty to diligently obtain the necessary information and prepare and provide its damages computation within the discovery period." *Jackson v. UA Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011).

The Court's Case Management Order stated that "[p]arties who fail to timely disclose relevant information will be precluded from using it in the case[.]" Doc. 28 at 2 n.2. Rule 37(c) states that a party who fails to make mandatory disclosures under Rule 26(a) – which are the same as the damages disclosures required by the MIDP – may not use the undisclosed information at trial unless the failure is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The Court cannot conclude that Plaintiff's failure to disclose his medical damages was substantially justified. His lawyers had the power to obtain the medical records needed to compute and disclose the damages, but failed to do so. Nor can the Court conclude that the failure was harmless. Without being informed of Plaintiff's medical damages and the records upon which they were based, Defendants could not prepare to respond to those damages at trial.

The Court will **grant** Defendants' motion in limine and preclude Plaintiff from presenting evidence of medical damages at trial. *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008) (affirming exclusion of damages evidence at trial because "[d]isclosure of damage calculations was mandated under Rule 26(a)"); *In re Gorilla Companies, LLC*, 454 B.R. 115, 120 (D. Ariz. 2011) (damages should have been precluded in bankruptcy trial because they were not disclosed during discovery as required by Rule 26).

### 2. Dr. Youssef.

As amended in 2010, Rule 26(a)(2) requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). This includes treating physicians. *See* S. Gensler and L. Mulligan, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 26 at 805 (2023) ("courts consistently hold that treating physicians ordinarily must be

7

disclosed as expert witnesses (or have their testimony limited to lay fact observations)") (citing cases). If a physician is not specially retained for the litigation, the party need not produce a full expert report under Rule 26(a)(2)(B), but must provide a disclosure under Rule 26(a)(2)(C) of the subject matter of his testimony and the facts and opinions on which he will testify at trial. Fed. R. Civ. P. 26(a)(2)(C).[3]

This expert disclosure obligation was reinforced by the Court's Case Management Order:

> Disclosures under Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure must include the identities of treating physicians and other witnesses who will provide testimony under Rules 702, 703, or 705 of the Federal Rules of Evidence, but who are not required to provide expert reports under Rule 26(a)(2)(B). Rule 26(a)(2)(C) disclosures are required for such witnesses on the dates set forth above. Rule 26(a)(2)(C) disclosures must identify not only the subjects on which the witnesses will testify, but must also provide a summary of the facts and opinions to which the expert will testify. The summary, although not as detailed as a Rule 26(a)(2)(B) report, must be sufficiently detailed to provide fair notice of what the expert will say at trial.

Doc. 28, ¶ 5(e).

Plaintiff does not dispute that he failed to provide disclosures under Rule 26(a)(2)(A) and (C) for Dr. Youssef. Plaintiff argues that he identified Dr. Youssef as one of his treating doctors and that this disclosure was sufficient for Defendants to know what he would testify about. The Court does not agree. Plaintiff did not identify Dr. Youssef as a witness who would express expert opinions under Rule 702 as required by Rule 26(a)(2)(A), did not identify the subjects he would address as required by Rule 26(a)(2)(C), and did not provide a summary of the facts and opinions on which he would testify under Rule 26(a)(2)(C).

Plaintiff provides no substantial justification for this failure, and Defendants have been harmed by not knowing what Dr. Youssef would say at trial and by not being able to

---

[3] In this Circuit, and as recognized in the Court's Case Management Order, treating physicians are deemed to be "specially retained" for purposes of the disclosure rules when they express opinions beyond those formed during the course of their treatment. If a physician will express such opinions at trial, a detailed Rule 26(a)(2)(B) report is required. Doc. 28 at 4 n.2 (citing *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011)).

prepare for that testimony. Fed. R. Civ. P. 37(c)(1). As a result, Defendants' motion in limine is **granted** and Plaintiff is precluded from using Dr. Youssef for anything other than simple fact testimony. *Id.*; *see also* Rule 26, 2010 Advisory Committee Notes (recognizing that treating physicians can give both fact and expert testimony, and that Rule 26(a)(2) disclosures are required for expert testimony); Gensler at 805 (same, citing cases).

The Court recognizes that the distinction between fact and expert testimony is particularly difficult when a treating physician testifies about treatment provided to a plaintiff. The Court will do its best to maintain this distinction and limit the testimony of Dr. Youssef to facts. Defendants may object if they believe Dr. Youssef is straying into expert opinions.

### E.   Defendants' Motion in Limine No. 5 (Doc. 161).

Defendants move to preclude Plaintiff from eliciting any testimony, written discovery responses, or exhibits pertaining to the allegations in Count II of the Second Amended Complaint. Plaintiff does not oppose this motion. Doc. 170 at 2. The Court will **grant** the motion in limine.

### F.   Defendants' Motion in Limine No. 6 (Doc. 162).

Defendants move to preclude Plaintiff's expert, Carl Toersbijns, from opining that Defendants Bowers or Romero were deliberately indifferent, asserting that such testimony would express an improper legal conclusion. Plaintiff responds that Rule 704 specifically permits an expert to testify on an ultimate issue. Doc. 176.

While expert testimony concerning an ultimate issue is not per se improper, "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). Although not cited by the parties, numerous courts have held that "deliberate indifference" has specialized legal meaning and experts state inadmissible legal conclusions when they opine that particular conduct constitutes deliberate indifference. *See, e.g., Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) ("The expert . . . may not testify, however, that the lax discipline policies of the Detroit Police Department indicated that the City was deliberately indifferent to the welfare of its citizens."); *Anderson*

*v. Jones*, 440 F. Supp. 3d 819, 830 (S.D. Ohio 2020) (noting that "'deliberate indifference' has a specialized – i.e., legal – meaning in the Eighth Amendment context," and that expert testimony "that certain conduct constitutes 'deliberate indifference'" is inadmissible); *Lee v. Jackson Cnty.*, Mississippi, No. 1:13CV441-HSO-RHW, 2017 WL 11674720, at *1 (S.D. Miss. Feb. 13, 2017) ("An allegation of 'deliberate indifference' is merely a legal conclusion. . . . [E]xpert witnesses are not permitted to render conclusions of law.") (cleaned up); *Scarim v. Ryan*, No. CV-11-01736-PHX-SRB, 2013 WL 12096528, at *2 (D. Ariz. Apr. 16, 2013) ("Dr. Thomas clearly offers an improper legal conclusion couched in the terms of an expert opinion: 'It is further my opinion that, from the material I have reviewed, there was no deliberate indifference expressed pertaining to [Plaintiff's] medical needs.'"); *Meippen v. Spokane Cnty.*, No. CV-07-220-FVS, 2009 WL 10704687, at *6 (E.D. Wash. May 18, 2009) ("Dr. Hemmens may not opine that Nurse Dunphy acted with deliberative indifference."); *Wisler v. City of Fresno*, No. CVF 06-1694 AWISMS, 2008 WL 2880442, at *5 (E.D. Cal. July 22, 2008) ("testimony that an individual acted with 'deliberate indifference' is a legal conclusion. Clark may not testify that Long acted with 'deliberate indifference.'") (citations omitted).

The Court agrees with these decisions. For Toersbijns to opine that Defendants' conduct amounted to deliberate indifference would do more than state an opinion on an ultimate issue as permitted by Rule 704. It would assert that Defendants' actions fall within the specialized legal meaning of "deliberate indifference," infringe on the Court's role to define what conduct constitutes deliberate indifference, invade the province of the jury, and allow Toersbijns to opine on Defendants' subjective state of mind at the time of the events in this case. None of this would be proper. The motion in limine will be **granted**.

### G. Defendants' Motion in Limine No. 7 (Doc. 163).

Defendants move to preclude Toersbijns from offering opinions "regarding the completion of the Prison Rape Elimination Act ('PREA') checklist completed by Defendant Bowers[.]" Doc. 163 at 1. Relying largely on the Court's summary judgment ruling, Defendants ask that the Court exclude opinions by Toersbijns that (1) Defendant Bowers should have completed entries 10 through 20 of the PREA checklist, and (2) that Defendant

10

Bowers and Romero operated outside the chain of command in addressing Plaintiff's PREA complaint.

Defendants misread the Court's summary judgment ruling. Far from excluding them, the Court relied on Toersbijns' opinions when it concluded there was sufficient evidence for a reasonable jury to find for Plaintiff. Doc. 133 at 11-13. While it noted that "some of the items on the PREA checklist did not apply to Plaintiff's situation," the Court found some portions clearly relevant: "the checklist indicates that Defendant Bowers did not ensure Plaintiff was interviewed specifically for Protective Segregation needs." *Id.* at 12. And although the Court stated that the document itself did not show that Defendants failed to follow the chain of command, the Court did not address Toersbijns' opinion that "Bowers should have contacted her superior officer – in this case, her captain, the chief of security – and asked for a decision on protective custody." Doc. 177 at 4.

Defendants' motion is based on relevancy. The Court finds, however, that Toersbijns' testimony about the PREA checklist and investigation, and about the proper line of authority for determining whether Plaintiff should have been placed in protective custody, are clearly relevant to Plaintiff's claim that Defendants knowingly failed to afford him the protection his situation warranted. The motion in limine will be **denied**.

### H.     Defendants' Motion in Limine No. 8 (Doc. 164).

Defendants move to preclude another of Plaintiff's experts, Dr. Dale Watson, from offering testimony related to opinion No. 2 from his expert report regarding how Plaintiff's current neuropsychological functioning differs from his functioning before his October 26, 2017 brain injury. Defendants contend that "[i]n forming this opinion, Dr. Watson relied on a host of documents not disclosed during the discovery period, in violation of the Court's Mandatory Initial Discovery Pilot ('MIDP') and Rule 26(a)(2)(B)(ii)-(iii)." Doc. 164 at 1. Defendants then list 9 of the 37 documents listed in Watson's report. *Id.* at 1-2; Doc. 164-1 at 5-7. Defendants' complaint is not that Dr. Watson failed to identify these documents as information he considered, but that the documents were not produced to Defendants with his report.

This motion smacks of gamesmanship.  Defendants seek to exclude important expert opinions on the ground that although the expert clearly told them about documents he considered in forming his opinions, he did not actually give them the documents.  And Defendants mis-cite the rules and MIDP requirements.

Defendants rely on Rule 26(a)(2)(B)(ii), but that rule requires an expert report to "contain" the "facts and data" the expert considered in forming his opinions.  Watson's report contains citations to each of the documents about which Defendants complain.

Defendants rely on Rule 26(a)(2)(B)(iii), but that rule requires the expert report to include "any exhibits that will be used to summarize or support" the expert's opinions.  This rule clearly refers to trial exhibits.  Defendants do not contend that the undisclosed documents will be used as trial exhibits to summarize or support Watson's opinions, and Plaintiff avows that they will not.

Defendants argue that the MIDP required Plaintiff to produce the documents, but the MIDP required parties to "[l]ist" relevant documents in their disclosures, and specifically stated that documents could be produced or made available for inspection. Doc. 3 at 7.  It also stated that information "revealed in a written discovery response . . . that reasonably informs all parties of the information" need not be included in an MIDP disclosure. *Id.* at 6.  Watson's report reasonably informed Defendants of the documents he considered.

Finally, Defendants contend that they were unable to prepare a responsive expert report because the documents were not produced.  This is unconvincing.  Watson's report disclosed the opinions he would give at trial and the bases for them.  This was sufficient for Defendants to decide whether to produce a responsive expert.  And if they needed to review some documents Watson considered before deciding whether to retain their own expert, Defendants could have called Plaintiff's counsel and requested them, and then called the Court if the documents were not forthcoming.  The motion in limine will be **denied**.

**I.      Defendants' Motion in Limine No. 9 (Doc. 165).**

Defendants move to preclude Plaintiff from introducing any testimony or exhibits reflecting the absence of surveillance cameras observing the location where Plaintiff was assaulted on October 26, 2017.  Defendants note that they do not decide where the Arizona

12

Department of Corrections, Rehabilitation and Reentry places surveillance cameras, or how much it spends on cameras, and assert that this evidence would be unfairly prejudicial to them.  Doc. 165 at 2.  Plaintiff responds that the absence of surveillance cameras may be relevant to the risks Defendants knew about when they released Plaintiff to the general population.  Doc. 179.

The Court cannot conclude that evidence about camera placements is irrelevant.  If Defendants were aware of areas in the Cook Unit that had no camera coverage, it might be relevant to their assessment regarding the risk of an assault.  Nor can the Court conclude that Defendants will be unfairly prejudiced by such evidence.  Defendants can present evidence and argument that they had no control over camera placement in the facility.  The motion will be **denied**.

**IT IS ORDERED** that the motions in limine are granted, denied, or taken under advisements as set forth above.

Dated this 18th day of January, 2024.

David G. Campbell
Senior United States District Judge