**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fernando Hernandez Richter, | NO. CV-19-5513-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Christopher Romero, et al., | |
| Defendants. | |

Plaintiff Fernando Hernandez Richter, who is currently confined in the Arizona State Prison Complex and is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that on October 26, 2017, he was severely assaulted by one or more prisoners. He asserts an Eighth Amendment failure-to-protect claim against Defendants Christopher Romero and Julie Bowers. He alleges that Defendants, who were prison guards, knew of and disregarded an excessive risk to his safety, resulting in his assault. Doc. 31 at 11-12, 16-17. A five-day jury trial will begin on January 29, 2024. Doc. 152.

Defendants have filed a motion to reconsider the Court's rulings on the admissibility of Plaintiff's child abuse convictions (Docs. 200, 201). Doc. 202. The motion is fully briefed (Docs. 204, 212) and the Court will rule promptly because trial starts on Monday.

The Court agrees that its previous order failed to address the Rule 705 arguments made by Defendants at the final pretrial conference. Doc. 200. The Court will correct that oversight and address the issue in this order.

### A. Defendants' Argument.

Defendants argue that Plaintiff's expert, Carl Toersbijns, testified in his trial deposition about the causes of Plaintiff's injuries. Toersbijns testified that Plaintiff had been identified as a "fence jumper" – an inmate who crosses racial lines and thereby invites trouble. Doc. 193-1, transcript pages ("Tr.") 45-46. Toersbijns also testified about other risks facing Plaintiff, including his complaint to Defendants after arriving at the Cook Unit that he had been sexually assaulted at the Meadows Unit before his transfer (the "PREA complaint"), and the fact that he made the complaint by going to the medical unit on his own, an action that would have caused other inmates to suspect he was a snitch. *See* Tr. 57-58. Toersbijns testified these risks should have persuaded Defendants not to place Plaintiff in the general population of the Cook Unit.

Defendants contend that Toersbijns' testimony (which was recorded in a trial deposition because Toersbijns is not available for trial) went beyond mere risk identification and suggested that Plaintiff was assaulted *because* of his fence-jumping, PREA complaint, and suspected snitching. Defendants argue that Toersbijns' testimony about the possible causes of Plaintiff's assault should enable them, under Federal Rule of Evidence 705, to present cross-examination testimony in which Toersbijns acknowledged that the facility's post-assault investigation identified another potential cause of the assault that Toersbijns disregarded and that Defendants could not have known about. This possible cause was an assault by Plaintiff's incarcerated brother-in-law in revenge for Plaintiff's child abuse of Plaintiff's step-daughters – the brother-in-law's nieces. Plaintiff responds that Rule 705 does not apply because Toersbijns gave no causation opinion and the possible revenge explanation is therefore not inconsistent with his opinions.

### B. Rule 705 Analysis.

Rule 703 states that an expert may base his opinion on inadmissible facts and data if they are the kind of information experts in the field would normally rely on. Fed. R. Evid. 703. Rule 705 then states that although the expert may testify about his opinions without recounting the facts and data during his direct examination, "the expert may be required to disclose those facts or data on cross-examination." Fed. R. Evid. 705. Defendants argue

2

that because Toersbijns reviewed the post-assault investigation report and relied on it for some of his testimony, they should be permitted to cross-examine him on the fact that the investigation identified a possible cause for Plaintiff's assault that is not addressed in his opinions. This argument depends, in part, on whether Toersbijns stated an opinion on the cause of Plaintiff's assault.

In support of their argument that Toersbijns testified that Plaintiff's fence-jumping caused his assault, Defendants rely on testimony the Court has excluded from the trial evidence – Tr. 90:19-23; 91:12-14; 91:23-92:7; 92:8-13. *See* Docs. 201 at 4, 202 at 3-4. Because this testimony will not be presented at trial, it does not support Defendants' position.

Defendants also argue that Toersbijns testified that Plaintiff's PREA complaint and suspected snitching caused his assault. In support, they cite his testimony that Plaintiff put a "red flag" on himself when he went to the medical unit to make the sexual assault complaint, and did so without another inmate to confirm that Plaintiff was not snitching on other inmates. Tr. 58:23-59:10. Toersbijns testified that Defendants knew Plaintiff was therefore in "imminent danger" and that his actions "may have been harmful to his presence on the population." Tr. 74:12-25. This testimony was elicited by Plaintiff's counsel during direct examination and will be played to the jury during trial.

Defendants argue this testimony will convey to the jury the opinion that Plaintiff was assaulted *because* he made a PREA complaint and did so in the medical unit without a second inmate to confirm he was not snitching. Although it is true that Toersbijns does not say that Plaintiff's PREA complaint and suspected snitching "caused" his assault, the Court agrees that a jury is likely to draw this causation conclusion from Toersbijns' testimony that the Plaintiff's sexual assault complaint put a "red flag" on him and created an "imminent danger." Plaintiff was assaulted only a few hours after his visit to the medical unit.

Toersbijns confirmed during his direct testimony that he reviewed the post-assault investigation report. Tr. 88:21-89:9. He opined that the investigation was "pretty thorough" and said it showed that Plaintiff faced "a bigger problem tha[n] the two realized because of the amount of people that were involved[.]" *Id.* at 88:23-24, 89:1-2. The words "the two"

in this testimony clearly refer to Defendants Bowers and Romero. Toersbijns continued: "And once the information got out after the assault, the number of people allegedly involved in this stomping or beating of Inmate Richter – it was a larger crowd than you can imagine, indicating to me that there was a little bit more severity on this particular matter than initially believed to be." *Id.* at 89:4-9. This testimony was elicited by Plaintiff's counsel, has not been objected to, and will be heard by the jury, and clearly could lead the jury to conclude that Plaintiff was stomped and beaten by a large crowd because of the risks Defendants disregarded and Toersbijns outlined.

Because Toersbijns relied on the post-assault investigation for this testimony, the Court concludes that Rule 705 permits Defendants to inquire into another possible cause of the assault that was clearly identified in the investigation and yet unknown to Defendants – the possibility that Plaintiff was assaulted by his incarcerated brother-in-law in retaliation for Plaintiff's abuse of his brother-in-law's nieces. Toersbijns' failure to account for this possible cause in his opinion could be viewed by the jury as undercutting the credibility of his opinions.

Both parties cite the Ninth Circuit's recent decision in *Jensen v. EXC, Inc.*, 82 F.4th 835 (9th Cir. 2023), to support their arguments. *Jensen* held that defendants in a civil traffic accident case should not have been permitted under Rule 705 to cross-examine the plaintiff's expert with an accident report created by the Arizona Department of Public Safety ("DPS"). The error was allowing the defendants to elicit testimony that the report had been prepared by a DPS officer who concluded the accident was caused by the plaintiff driver – contrary to the expert's opinion, and allowing the defense to use the DPS officer as a non-testifying expert witness on the cause of the accident. The Ninth Circuit explained:

> The careful strictures that Rule 702 sets on expert testimony would be substantially undermined if, in cross-examining an expert, a contrary expert opinion that the testifying expert has read and rejected can be placed before the jury with insufficient foundation as to its adequacy. The risk of unfair prejudice is particularly great where, as here, the contrary opinion was rendered by a law enforcement or other government official, inasmuch as – without any adequate foundation – it puts the imprimatur of the State behind

4

      the contrary view. Indeed, that seemed to be the *only* purpose served by the cross-examination here.

*Id.* at 851-52.

*Jensen* further explained, however, that "[n]othing in the principles described above prevented defense counsel from exploring, in appropriate cross-examination, why the testifying expert rejected other competing substantive explanations for how the accident occurred." *Id.* at 852. That is precisely what Defendants propose to do here. They do not seek to admit an opinion of the post-assault investigator on the cause of Plaintiff's assault. Indeed, the investigator did not reach a conclusion on the cause. They instead seek to admit the fact that the investigation identified a possible cause of Plaintiff's assault – retaliation by the brother-in-law for Plaintiff's abuse of his nieces – that Toersbijns failed to account for in his expert opinions. This line of questioning – exploring why the testifying expert rejected a competing explanation for the assault – is just what *Jensen* says is permitted under Rule 705. *Id.*

Although Toersbijns does not expressly opine that fence jumping, the PREA complaint, and suspected snitching are the "causes" of Plaintiff's assault, his admissible testimony will clearly suggest to the jury that these risks – known to Defendants – led to Plaintiff's beating. Because the investigative report that Toersbijns reviewed and testified about clearly identified a possible additional cause that Toersbijns chose not to address, the Court concludes that it is fair cross-examination under Rule 705. The Court therefore will reconsider part of its ruling in Doc. 201 and permit Defendants to present the following portions of Toersbijns' deposition at trial: Tr. 137:1-7; 137:10-139:2; and 139:24-142:21.

      **C.**    **Rule 403.**

The Court is obligated to evaluate this ruling under Rule 403. The Court concludes that the possible alternative risk that Toersbijns did not consider, despite the fact that it was identified in the investigation he reviewed and testified about, is highly relevant to the jury's evaluation of Toersbijns' testimony in this case. Although disclosure of Plaintiff's child abuse convictions presents a clear risk of unfair prejudice, the Court concludes that the risk

of prejudice can be mitigated significantly by Defendants' proposal at the final pretrial conference. Therefore, the parties will not elicit or mention any specific facts about the conduct underlying Plaintiff's actions, the parties will state only in general terms that Plaintiff was convicted of crimes in which his stepdaughters were victims, and the parties will stipulate to Plaintiff's proposed instruction that Plaintiff was not convicted of any sex offenses. The parties should work out stipulations on these issues and present them to the Court on Monday morning. The Court will also entertain an instruction that the jury should consider Plaintiff's convictions only in deciding whether he has met his burden of proof on his § 1983 claims, and for no other purpose. Plaintiff may propose such an instruction if he feels it would be helpful. With these mitigating measures, the Court concludes that the probative value of Defendants' Rule 705 cross-examination is not substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

### D. Concluding Thoughts.

Rule 705 permits disclosure only by cross-examination. The Court therefore stands by its ruling that the unredacted versions of deposition exhibits 9 and 10 are inadmissible. But if redacted versions of those exhibits are admitted in evidence, Defendants may renew their Rule 106 objection as noted in the Court's previous ruling.[1]

Finally, Defendants ask for clarification on whether they may admit testimony from the Toersbijns deposition at Tr. 34:1-13 and 36:4-13. Plaintiff lodged no objection to this testimony and it has not been excluded by the Court. *See* Doc. 201 at 2.

**IT IS ORDERED** the motion for reconsideration (Doc. 202) is **granted.**

Dated this 26th day of January, 2024.

_David G. Campbell_
David G. Campbell
Senior United States District Judge

---

[1] In light of the Court's ruling in this order, the Court need not address Defendants' Rule 106 argument with respect to Toersbijns' deposition. The Court notes, however, that the argument also relies on testimony the Court has excluded from evidence. *See* Doc. 202 at 6-7.